IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JANENE BURTON,<br><br>                  Plaintiff,<br><br>v.<br><br>JORDAN SCHOOL DISTRICT, a subdivision of the State of Utah; ANTHONY GODFREY, in his individual and official capacities; LAWRENCE URRY, in his individual and official capacities; and JOHN DOES 1-5,<br><br>                  Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br><br>Case No. 2:15-CV-766 TS<br><br>District Judge Ted Stewart |

       This matter is before the Court on Defendants' Motion for Summary Judgment. For the reasons discussed below, the Court will grant Defendants' Motion as to Plaintiff's federal claims and decline to exercise supplemental jurisdiction over Plaintiff's state-law claims.

I.   BACKGROUND

       Ms. Janene Burton ("Burton") became a Career Employee of Jordan School District in 1984. Burton was diagnosed with type 2 diabetes in 2007 and was soon after diagnosed with type 1 diabetes. In 2007, Burton filed for and received medical leave under the Family and Medical Leave Act ("FMLA"). Burton returned to work after her leave, but obtained FMLA leave again for the first quarter of the 2009–10 school year.

      Prior to the 2010–11 school year, Burton used her fifth period prep hour to check her blood sugar levels. Burton was also allowed to park in a handicap spot and keep a refrigerator in her room. In 2010, Burton's new principal, Mr. Lawrence Urry ("Urry"), changed Burton's

1

schedule so that she would no longer have fifth period prep. Urry also notified Burton that she would no longer be given a handicap parking spot or a refrigerator for her room. Burton believed that these accommodations were necessary for her medical condition. Burton explained this to Urry and requested that he restore the accommodations, but Urry declined her request.

Burton then went to Anthony Godfrey ("Godfrey"), an associate superintendent for the Jordan School District and Urry's direct supervisor. On August 18, 2010, Burton discussed her situation with Godfrey. As they talked, Burton became emotional. The parties disagree as to what transpired during the meeting and whether there was one meeting or multiple meetings. Burton claims she requested leave for a year and that Godfrey assured her an extended medical leave with a guaranteed teaching spot upon Burton's return. Godfrey then allegedly pushed a form towards her, leaving his hand over the title and other key portions, and instructed her on how to fill it out while assuring her that the form would secure an extended medical leave.[1] In fact, the form was a Notification of Resignation.

According to Godfrey, Burton announced that she "need[ed] to be done," and wanted to quit.[2] Godfrey claims that he warned Burton that she would have to go through the application process if she resigned and then wished to be re-employed by the District. He then directed Burton to Human Resources ("HR"). Godfrey claims that he did not discuss FMLA leave with

---

[1] Docket No. 40 Ex. 12, at 78:14–17; 79:1–16.
[2] *Id.* Ex. 14, ¶ 11.

Burton, that he never provided a form to Burton,[3] and that, prior to August 2013, he did not know whether Burton resigned, remained, or took leave following their meeting.[4]

The day after Burton signed the Notification of Resignation, the District HR Director sent a letter accepting Burton's resignation with an enclosed Employee Benefits Notification.[5] Burton claims she never received the letter accepting her resignation, but did receive the benefits form. The form clearly noted that her reason for leaving was termination of employment. Burton signed and returned the form to the school district. On or about October 1, 2010, Burton signed and submitted a "withdrawal/Rollover 401(k) Plan Application," stating that her last day of employment was August 23, 2010. Burton withdrew the full balance of her retirement funds from her Utah Retirement System ("URS") account. Withdrawal of the full balance of 401(k) funds can only occur if the account holder terminates employment, retires, or reaches the age of 59 ½ years. The parties agree that Burton's withdrawal was not based on disability or age. Burton claims that she did not understand this and that she intended to make the withdrawal for her immediate needs, as she had done in the past, and pay the amount back into her account after she returned.

Burton returned to Jordan School District before the 2011–12 school year only to be directed to apply for open positions. Burton applied for positions in the spring of 2012 and in subsequent school years. Burton was eventually hired as a paraeducator by Granite School

---

[3] *Id.* ¶¶ 11–14.
[4] *Id.* ¶ 23. Regarding this final claim, Urry claims in his declaration that Godfrey notified him of Burton's resignation shortly after his meeting with Godfrey in August 2010. *Id.* Ex. 16, ¶¶ 9–11.
[5] *Id.* Ex. 6.

District, but failed to secure a full-time position in a location that was acceptable to her.[6] In October 2015, Burton filed this lawsuit against Jordan School District, Godfrey, and Urry, alleging a FMLA violation, a § 1983 violation, fraud, and a violation of the Utah Constitution.

## II. DISCUSSION

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[7] In considering whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[8] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[9]

1. *FMLA violation*

The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the FMLA.[10] A claim for abuse of FMLA provisions is typically subject to a two-year statute of limitations.[11] In the event that a violation is "willful," however, the statute of limitations is three years from the date "of the last event constituting the alleged violation for which such action is brought."[12]

---

[6] Burton turned down an offer to teach history at a middle school in Moab. *Id*. Ex. 12, at 140:22–25.
[7] Fed. R. Civ. P. 56(a).
[8] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).
[9] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).
[10] 29 U.S.C. § 2615(a)(1).
[11] *Id.* § 2617(c)(1).
[12] *Id.* § 2617(c)(2).

4

The Court can assume for the purposes of this Motion that Burton presented sufficient evidence to support a claim of a willful violation. Thus, the Court will apply the three-year period which begins on the date of the last event constituting the alleged violation.[13] Here, the alleged violation of the FMLA began with the alleged procurement of Burton's resignation by trickery in response to her request for leave in August 2010. Burton did not file her Complaint until October 2015. Therefore, this claim is barred.

Burton appears to make an argument for equitable tolling of the statute of limitations period by claiming that until 2015, "[she] was unaware of the fraud that Godfrey had perpetrated upon her and could not reasonably have filed a complaint."[14] The FMLA "does not contain provisions for tolling the statute of limitations nor does it address the continuing violation doctrine."[15] "The continuing violation doctrine is premised on the equitable notion that the statute of limitations should not begin to run until a reasonable person would be aware that his or her rights have been violated."[16] If a plaintiff knows or should have known of discrimination through the exercise of reasonable diligence, "a continuing violation claim will likely fail."[17] Further, the Tenth Circuit has "recognized equitable tolling of . . . time limitations only if the circumstances of the case rise to the level of active deception which might invoke the powers of equity to toll the limitations period. For instance, equitable tolling may be appropriate where a plaintiff has been lulled into inaction by [the actions of others]."[18]

---

[13] *Id.*
[14] Docket No. 50, at 19.
[15] *Packard v. Cont'l Airlines, Inc.*, 24 F. App'x 960, 962 (10th Cir. 2001).
[16] *Martin v. Nannie & Newborns, Inc.*, 3 F.3d 1410, 1415 n.6 (10th Cir. 1993).
[17] *Packard*, 24 F. App'x at 962.
[18] *Id.* (quoting *Biester v. Midwest Health Servs., Inc.*, 77 F.3d 1264, 1267 (10th Cir. 1996)).

Burton testified at her deposition that Godfrey told her in a phone conversation in 2013 that she "had really signed a resignation letter."[19] Even prior to this 2013 conversation, there were many events that would put a reasonable person on notice that fraud occurred. For example, in August 2010, Burton signed a benefits form which stated that her employment had been terminated. One year later, an employee from the school district's HR office told Burton that she would need to participate in open enrollment and apply for positions if she wanted to get her job back.[20]

Between 2011 and 2013, Burton took a job as a paraeducator in Granite School District and "kept applying for teaching positions" in Granite, Canyon, Moab, and Jordan School Districts, suggesting that she knew she was no longer a Jordan School District contract employee.[21] In addition, she testified to understanding that she was on her own for health insurance after her 2010 meeting with Godfrey, despite the fact that she did not lose her benefits the prior two times she took FMLA leave.[22]

Burton also argues that no resignation appeared in her personnel file. However, she failed to produce any evidence that a notice of resignation is typically filed in a personnel file. While Jordan School District employees may not have told her that she resigned until 2013, their statements and actions were clearly incompatible with Burton's claimed belief that she was still a contract employee. In addition, Burton signed a form shortly after the alleged fraud which clearly stated that her employment had been terminated. At this point, a reasonable person would have been aware that his or her rights were violated. For these reasons, the Court finds

---

[19] Docket No. 40 Ex. 12, at 125:3–6.
[20] *Id.* at 114:20–25; 119:1–3, 17–19,
[21] *Id.* at 122:13–25; 140:14–16.
[22] *Id.* at 103:19–20.

that Burton knew, or should have known, that her employment had been terminated before October 2012, which means tolling is not justified and Burton's FMLA claim is untimely.

2. *Due Process Under § 1983*

"42 U.S.C. § 1983 allows an injured person to seek damages against an individual who has violated his or her federal rights while acting under color of state law."[23] Burton brings a claim for a violation of the Due Process Clause of the Fifth Amendment. The Fifth Amendment applies only to federal employees,[24] and, therefore, does not apply to Defendants. The error has no practical effect because the "Fourteenth Amendment imposes no more stringent requirements upon state officials than the Due Process Clause of the Fifth Amendment upon their federal counterparts."[25] The Court will therefore apply Fourteenth Amendment law.

The statute of limitations for § 1983 actions is "drawn from the personal-injury statute of the state in which the federal district court sits."[26] Utah's personal injury statute of limitations is four years.[27] The Tenth Circuit has confirmed the application of Utah's four-year personal injury statute of limitations to § 1983 claims and the Supreme Court has implicitly endorsed this practice.[28]

---

[23] *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014) (quoting *Cillo v. Greenwood Village*, 739 F.3d 451, 459 (10th Cir. 2013)).
[24] *Dusenbery v. United States*, 534 U.S. 161, 167 (2002); *Ward v. Anderson*, 494 F.3d 929, 932 n.3 (10th Cir. 2007).
[25] *Ward*, 494 F.3d at 932 n.3 (quoting 16B Am. Jur. 2d Con. Law § 890).
[26] *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008); *see also Owens v. Okure*, 488 U.S. 235, 250–51 (1989).
[27] UTAH CODE ANN. § 78B-2-307.
[28] *Arnold v. Duschesne Cty.*, 26 F.3d 982, 985 (10th Cir. 1994).

7

"While state law governs limitations and tolling issues, federal law determines the accrual of section 1983 claims."[29]

> Claims under § 1983 . . . accrue when the plaintiffs know or should know their rights have been violated. A plaintiff need not have conclusive evidence of the cause of an injury in order to trigger the statute of limitations. Nor must a plaintiff know all of the evidence ultimately relied on for the cause of action to accrue. . . . The test is an objective one, with the focus on whether the plaintiff knew of facts that would put a reasonable person on notice that wrongful conduct caused the harm.[30]

Burton filed her § 1983 claims on October 28, 2015. Therefore, the question before the Court is whether Burton knew or should have known before October 28, 2011 (four years prior to filing her Complaint) that her rights had been violated.

On August 24, 2010, Burton met with Godfrey and signed a Notification of Resignation. On August 25, 2010, an Acceptance of Resignation was mailed by the school district's HR department to the address provided by Burton. Enclosed with the letter was the Employee Benefits Notification form that listed Burton's last day of employment as August 23, 2010, and plainly stated that the reason for leaving was termination. Burton signed the form on October 12, 2010, and returned the form to HR. On October 1, 2010, Burton filled out and signed the URS Withdrawal form, and under "Eligibility for withdrawal," the box next to "Last Day of Employment" is checked and the date filled in is August 23, 2010.[31] Burton also substituted until May 13, 2011, and when she returned to Jordan School District before the 2011–2012 school year, she was directed to apply for open positions. Finally, Burton testified to understanding that she was on her own for health insurance after her 2010 meeting with Godfrey,

---

[29] *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995).
[30] *Nicholas v. Boyd*, 317 Fed. App'x 773, 778 (10th Cir. 2009) (citations and quotation marks omitted).
[31] Docket No. 40 Ex. 13.

8

despite the fact that she did not lose her benefits the prior two times she took FMLA leave. All of this occurred prior to October 28, 2011. Thus, her § 1983 claim accrued more than four years before she filed suit.

Burton argues that she:

> was subjected to fraud in a manner that prevented her from discovering that she had not been placed on FMLA leave as she had requested, but rather that Defendant took advantage of her illness and tricked her into believing she had applied for such leave when in fact, she was induced to sign a document that purported to deprive her of her right to such leave and to her employment by the government.[32]

Burton supports these claims with a citation to *Merck v. Reynolds*,[33] and a statement that "[t]he Supreme Court has explicitly rejected the argument that the limitations period begins upon inquiry notice . . . ."[34]

Despite Burton's arguments, the facts listed above are sufficient to "put a reasonable person on notice that wrongful conduct caused the harm."[35] Even if Burton did not understand the implications of her initial meeting with Godfrey, and even if Godfrey tricked her into signing the Notice of Resignation, the events between Burton's termination on August 24, 2010, and October 2011, were enough to put a reasonable person on notice. Further, nothing that occurred after October 2011 justifies the tolling of the statute of limitations. Therefore, Burton's § 1983 claims are untimely.

---

[32] Docket No. 63, at 5.
[33] 559 U.S. 633 (2010).
[34] Docket No. 63, at 3. While Burton is correct that the statute of limitations period does not begin upon inquiry notice, the *Merck* Court states that "terms such as 'inquiry notice' and 'storm warnings' may be useful insofar as they identify a time when the facts would have prompted a reasonably diligent plaintiff to begin investigating. But the limitations period does not begin to run until the plaintiff thereafter discovers or a reasonably diligent plaintiff would have discovered 'the facts constituting the violation,' . . . irrespective of whether the actual plaintiff undertook a reasonably diligent investigation." *Merck*, 559 U.S. at 653.
[35] *Nicholas*, 317 Fed. App'x at 778.

3. *State Law Claims*

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."[36] However, "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."[37]

The Court's original jurisdiction arose because plaintiff asserted federal claims. Because the Court is granting Defendants' Motion for Summary Judgment on Burton's FMLA and § 1983 claims, the Court declines to exercise supplemental jurisdiction over Burton's state-law claims.[38] Therefore, Burton's state-law claims are dismissed without prejudice.[39]

III. CONCLUSION

It is therefore

ORDERED that Defendants' Motion for Summary Judgment (Docket No. 39) is GRANTED. Plaintiff's FMLA and § 1983 claims are dismissed with prejudice. The Court declines to extend supplemental jurisdiction over Plaintiff's state-law claims and dismisses them without prejudice.

---

[36] 28 U.S.C. § 1367(a).
[37] *Id.* § 1367(c)(3).
[38] While Plaintiff appears to assert a fraud claim under § 1983, that claim is more properly considered under state law.
[39] *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.").

DATED this 12th day of September, 2017.

BY THE COURT:

_____
Ted Stewart
United States District Judge